Our next case today, number 241482, Cassandra Ann Hernandez versus Pamela J. Bondi. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning judges. My name is Vamily Lopez Ortiz. I am the attorney for Cassandra Hernandez who is the appellant in this case. We are before this court because Judge Garcia Gregory dismissed Cassandra's two-part case summarily via summary judgment. I would like to reserve two minutes for rebuttal if I may be allowed. Thank you. So Cassandra filed a mixed case appeal with the district court. So she has one part which is the discrimination case and the other part which is the review of the Civil Service Reform Act insubordination charge. So we have the discrimination and the insubordination charge. Judge Garcia Gregory determined that both claims should be summarily dismissed via summary judgment. And that's why we're here. Because we believe that what Judge Garcia Gregory did was wrong and is against the case law that had been established by the circuit court. First, Judge Garcia Gregory determined that Cassandra could not prove via summary judgment her prima facie case of discrimination. I'm now going to concentrate on the discrimination part. Because she could not establish what was the prior protected activity. And sometimes the judge said that that prior protected activity was too removed in time from the actual removal from Federal Service. And that last argument is truly disingenuous. Because the investigation that resulted in the removal of Cassandra from Federal Service started in December of 2017. And she was removed in August. Who ordered the investigation? The investigation was ordered by the special agent in charge of the DEA in Puerto Rico, Apolonio Collazo. But he had been in his position for a few days. The person that had occupied that position until a few days before Apolonio Collazo referred for the investigation was Matthew Donahue. The investigation was started by a memo, an email that was written by Cassandra's first-line supervisor, ASAC Dave Joseph. And this is what we referred to as What is the evidence that that email that said stop the badness, which came from Joseph, was the reason that Collazo referred the case for investigation? What is the evidence connecting the email to the decision to investigate? Because that is what Collazo said for investigation. That is what Collazo said in the deposition. That is What did Collazo say in the deposition? What did Collazo say in the deposition? That he received the memo from Dave Joseph. He had been in the position only a few days. And he referred it to OPR for investigation. When you look at the OPR investigation, the origin of the investigation is that memo. What is the adverse action that you're claiming in the case? What's the adverse action? ¿Cómo que what's the adverse action? What is the adverse action in the case? Ah, the adverse action. The removal from federal service, yes. So between the, I'm just accepting what you said, between the report, the memo that Joseph writes to Collazo, you're saying had the effect of triggering an investigation. That investigation went on for years, correct? Yes. And had decision-makers that are not Collazo, not Donahue, not Joseph. Yes.  There's no evidence, or is it, I don't think, there's evidence that those people who downstream investigated and decided had anything to do with the retaliation allegation. So they decide to terminate. So why is that not, sort of break the causal chain here? They did a full investigation. She was found to be insubordinate. It wasn't, and that was the reason she was fired. And there's no evidence any of those people who made that decision were influenced. Well, no, I don't have the evidence because I asked for the evidence and the judge, I asked for several evidence regarding the actors, which is Donahue and Joseph, and the judge did not allow it. My question is, they're not the actors. The people who fire her are Gorskowski and the other people in OPR. You didn't ask for anything regarding them. And I guess I'm wondering why isn't that the focus of this case where there is no evidence? Because there was very, a lot of doubts regarding the investigation. These people, there were several people that intervened in the investigation. I mean, do you have any reason to believe that any evidence suggesting that Donahue and Joseph somehow influenced the actual decision makers? Yes, our theory has always been that the agency acted to protect Donahue and Joseph. That is why we requested their prior history, their prior record, to establish the prior knowledge and motive of the agency itself. And evidence that I have to that regard is the fact that even the investigators that reviewed the final report that was given in October of 2018, they cast doubts on the investigation. They said, what are the instructions you're referring to? And said, go get the memos. And the evidence was that that memo of October 11, 2017, the evidence was that Matthew Donahue knew that Cassandra never received that email. He knew it because they told him from the office, listen, she never opened that email. Why would we bring Maria? So he sent an email right after Maria. Cassandra did not receive it. Hurricane Maria. And then they said, go back to Joseph and ask him what is the directive that Cassandra supposedly violated. And he started to make reference to the October 11th, but that memo never appeared. So he made reference to the November 7th instruction given by Asac Dobie to Cassandra when he was giving her the five-day suspension that had been promoted prior by Matthew Donahue. Okay? And that instruction by Dobie was to communicate to Joseph verbally or in writing the nature of the leave she was going to take for sick leave. So that was the instruction received. You had a partial deposition of these two folks, correct? Of? Joseph. Oh, yes. But it was interrupted? Was it interrupted? Did you finish the deposition? Of Joseph? No. I did not take the deposition of Joseph. Joseph testified at the MSPB hearing. That's his testimony is there. Okay? What I'm referring to to support this factual statement is the actual investigation, OPR investigation that has the email, the memo from I don't remember the last name of one of these people that said, listen, go back to Joseph and ask him what is the directive. So these investigators go back to Joseph and Joseph says, oh, it's the October 11th, but I cannot find it. So really it's the November 7th directive, which was you communicate to Joseph verbally or in writing how you're going to take that sick leave. How are you going to what? How are you going to charge your sick leave? Because Cassandra had recurrent psychiatric hospitalizations for a psychiatric condition that was caused by the presence of Joseph. So she had no balance left. So she needed to get permission from headquarters and directive from headquarters as to what was the nature it was going to be charged. If she was going to get some donated leave or it was going to be leave without pay, whatever headquarters indicated. Counsel, could I just ask you, I understand she was out of leave. That seems to be undisputed. Is it also undisputed that the plaintiff who was secretary to the assistant special agent in charge was refusing to talk to the assistant special agent in charge? That is incorrect. That is the basis for the discipline that she received and was notified on November 7th. She was removed, not because of that. She was removed because allegedly in subordination for not notifying Joseph the nature of her sick leave after November 7th. Is there evidence that she was agreeing to communicate with the assistant special agent in charge the way an ordinary supervisor and subordinate would communicate? At the time this was happening, Your Honor, Cassandra was hospitalized. She was in psychiatric hospitalization. So she was not communicating. There is, however, there is, however, maybe this is pertinent. There is, however, a reference to Cassandra supposedly admitting that she was refusing to communicate with Joseph. Okay? And even the investigators say, listen, that is not enough because that admission is general. It does not make reference to any specific instruction. Okay? That is why they sent back and asked for that. Thank you. Okay? My time is over. Do we have any other questions I can answer? Thank you. Thank you, Counselor. Attorney for Apley, please come up and introduce yourself on the record to begin. Good morning, Your Honors, and may it please the Court, Gabriela Paglieri on behalf of the government. Now, this Court should affirm summary judgment in this case because the EEA terminated Hernandez's employment for a legitimate, non-retaliatory reason. She failed to follow basic supervisory instructions. The record amply supports the agency's legitimate reasons. What instructions did she fail to, what instructions specifically did she fail to follow? So an important fact here is that the instructions that started in October 2016, even before she had engaged in any EEO activity, the first instruction came from ASEC Joseph when he had to put her on leave restriction because she had accumulated too many on-schedule absences and had a negative balance of over 130 hours of sick leave. And that is in the notice of leave restriction, and he specifically told her, her supervisor told her, that she must report the leave that she planned to take directly to him, not through an intermediary. That implicitly states that she was doing this beforehand. That's why she needed the instruction. And that's at Appendix 454 to 56. When you say, when you say directly to him, not text or voice, do you mean face-to-face? Is that how you're interpreting? A phone call would have been appropriate as well. But she refused to talk to him, and we know that from the record. She refused to talk to him not just about leave, but about work. And her position was to assist him as secretary. But she would send intermediaries and disrupt employees, other employees' work to go. Does that evidence come from her? Does she say, yes, I refuse to have verbal communication with him? Well, that evidence comes directly from the record. For example, when she was given the five-day suspension, that memo that was from Donahue to her, to which she has never objected. She hasn't said that is false. That memo talks about her using intermediaries to go to Joseph's office. This gets to my concern in the case, I think, which is this Rule 56D, when the judge doesn't permit the discovery. So, in her view, I think, Donahue and Joseph are the bad actors. They are obviously people that are interviewed as part of the investigation, I would take it. And you just told me the key evidence comes from them. What I heard your friend say at the podium was, her theory is that the decision-makers at DEA were attempting to protect Donahue and Joseph and fine against the plaintiff here, because it was sort of a circle of the wagons. And so, your response is, no, this was clean as the driven snow investigation. She was insubordinate, and we fired her. I guess what I'm wondering is, it seems relevant if the decision-makers knew that the evidence about Joseph and Donahue was, they were bad. They did sort of stuff all the time to get, you know, people in trouble for bad reasons, then that would suggest that for the investigation to rely on their credibility as the, you know, people giving the information should be suspect. And the judge, for reasons I can't fully understand, first said, yes, you can learn about Joseph's and Donahue's background, and then said, no, you can't. And now that I'm sort of understanding a little bit about the theory, it seems like that would go to, should the DEA have been relying on them? If they shouldn't have been, was this actually a circle of the wagons exercise? And that would be problematic. So, why was it wrong for the judge to sort of reverse course on his discovery ruling? So first, addressing the discovery. Context is key here. When she asked, the first thing to understand is what she's asking for. So, she's asking for all notices of personal actions against employees in her division, and she's asking for all EEO and OIG complaints against Joseph and Donahue. To get Rule 56D discovery, you have to make three showings. One of those is to show that you could not have gotten the information, why you couldn't have gotten the information earlier. She had a full prior litigation where she engaged in a ton of discoveries specifically covering the time frame where she was under the supervision of these two actors. She alleged discrimination claims against these two actors. So, she could have gotten the discovery. Therefore, the court did not abuse its discretion by denying the Rule 56D. What litigation? Is this state court litigation? No, no, no. She went to district court and this court affirmed. So, she had a lot of time to discover these alleged, she hasn't even explained or showed any plausible basis that they exist, but any EEO complaints. And that's not all. Let's say, okay, she couldn't have gotten them before. She still has to make another showing, and it's that they're essential to defeating the summary judgment in this case. I'm trying to just make the argument why they could have been, because if she's trying to sort of, I'll say, dirty up the investigation that DEA did, one way to do it was to say DEA knows it has these supervisors who are kind of bad folks, and our choices are to deal with them or just fire this assistant. And what we're going to do instead is we're going to give them credibility in what they tell us, and we're going to get rid of this person who's much lower down on the chain. And one way to argue, if it showed that there were all these EEOC things out there against these people, it would be a way to suggest that maybe the decision to accept these supervisors' story as true should be questioned. Understood, Your Honor. But here, the record, even if she could show some suggestion that there were, because there were other EEO complaints, we need to look at what her burden is. Here under the McDonald-Douglas analysis, she had the burden first to establish a prima facie case. To do that, she had to show causality between her EEO complaint in 2016 and her ultimate removal in 2020. Now, we know that the instruction on which her removal was based and which was repeated throughout came even before she filed the EEO complaint, so it cannot be causally related to that. And then after the agency establishes a legitimate reason for why it terminated her employment, then the burden shifted to her to prove pretext. Now, if we look at what happened, even if she could show that the agency was somewhat aware of EEO complaints against these actors, we know that there was a full-fledged independent investigation. I asked what they relied on, and you said they relied on statements by these other people. No, they relied also on statements by other witnesses, and the record shows that at least three other witnesses that were not in her chain of command, that were other employees, corroborated that she was often insubordinate and that she was giving him the silent treatment and refused to talk to him. So, now, after, the other thing she relies on here is this madness email, and we know – again, context is key here – we know that the record is more consistent with the madness that Joseph was referring to, being more of him being fed up with the disruptions caused by the appellant than him having some sort of vendetta for the EEO complaint. That's a matter of argument, right? I thought that was in response to her calling the Puerto Rican police to come in to the DEA office? That is correct, and I can understand how somebody might react by calling that madness. Excuse me, Your Honor? I can understand why somebody might call that madness. And when you add to that that this employee had a history of disruptive behavior, in 2016 she had to be put on leave of restriction. When she continued to fail to follow orders and tell him about leave, she had to be put on AWOL. In the light most favorable to her, though, couldn't the madness be multiple EEO complaints, now calling the police? She's clearly – there's clearly disruption here and difficulty, and you can call that madness, but it could be – some of it could be referring to the protected activity, couldn't  So maybe by looking just at the madness wording and what happened previously, and that is disregarding the fact that the instructions came before she even filed the EEO complaint, so they couldn't be related. But we know from Zach Collazo's referral to the OPR that the investigation had nothing to do with her EEO complaint and everything to do with her disruptions. For example, in his memo referring her to an investigation, he says, the altercation with Jones was the latest incident in a series of office disruptions in which Hernandez was involved, and that she continued to disregard DEA policy and procedures and consistently failed to follow instructions given by the DEA. And that's at Appendix 262. This confirms that the madness was referring to her continuous disruptions. It was not referring to any of the EEO filings that she had made. Can we go back to the discovery? Because she had requested discovery and it had been granted, and then there was a summary judgment that was granted before the discovery was produced. I mean, so it's not strictly a 56-D situation, is it? I mean, this is not her saying we need to avoid summary judgment because there are other things I need to know about that I haven't sought yet. She sought this discovery and didn't get it. So she didn't have a chance to flesh out any of her theories of prosecution of the case. No, so she got a lot of discovery, and as you can see from the – But there was still more that she had timely requested that had not been produced. She had timely requested it in – the first request comes in February, if I may just finish my point. In February 2022, Hernandez's request, the EEO complaints against Donahue and Joseph. But then the government response, and in producing documents satisfying the other requests, the government lays objections to the relevancy and over-broadness of those requests. Now later on, once the summary judgment deadline is approaching, she files a motion to compel. When the government responded, unfortunately, the government said, Your Honor, we're complying. We asked for an extension to further comply, but it did not address the objections to the other – to the requests that are at issue. It was complying with the other requests that she had made, and it actually produced the emails that she was requesting and the phone number that she was requesting. But she still didn't get what she was looking for. She wasn't entitled to what she was looking for. She hasn't shown – You filed an objection. Was there a motion to compel? Yes. So there was a – there was a motion to – after the motion to compel, we respond. We don't address the objections. That's when the court grants it as unopposed and puts a deadline for us to respond. Then she moves for sanctions because we didn't comply with that deadline. And then in response to that, we object to the sanctions and explain what were our objections to the request and saying that they were overbroad, they went into privilege issues and confidentiality, and they were irrelevant to her point because she was – she said that she needed the information to show that the agency was aware of their behavior. But they stopped being her supervisors in December 2017, and the investigation – independent investigation went on for three years after that. So after that, the government – the court, with the benefit of further briefing and our objections, then denied her request for sanctions and therefore denied also the Rule 56D motion. And in that order where he – the court ultimately clarifies – the court says that one of the reasons that the claim – the request of information was irrelevant. It reminded Hernández that the claims of discrimination in a hostile work environment were previously litigated and decided against her, and this must be limited to a retaliatory removal claim. Let me just focus and just make sure I understand, though, on what was asked for. One of the things that was asked for were EEO – prior EEO complaints brought by other employees against Joseph and Donahue, correct? Correct. One. And two, those were never turned over, correct? Correct. With a caveat that she did get one prior EEO complaint in the previous litigation, right, that was filed against – by another employee in 2009. And the theory of her case is that the DEA relied too heavily on the statements of Donahue and Joseph in finding her misconduct. No, that is not the theory of the case. She has never – in her briefing, in her opening brief or in her reply, she never challenged the independence or legitimacy of the investigation. She now comes here and says, oh, yes, they infected the investigation when prompted by Your Honor's questions, but she never argued this. All she argued was that the Madness email somehow showed causality between the – her EEO complaint and her ultimate removal and her other reason for showing pretext is that they – the instruction itself to communicate with her supervisor was retaliatory. And as explained, it could not have been retaliatory because it predated her EEO complaint. Thank you, counsel. Thank you, Your Honor. Thank you, counsel. Attorney Lopez-Ortiz, you have a one – sorry, two minutes rebuttal, yes. I would like to clarify several points of fact. First of all, I was not the attorney in the other case, so I don't understand how is it that the government argues that if they sought or that the information that was pertinent in this case, as per me, who was the trial attorney, in asking for discovery, we should have asked for it in the previous case, which had nothing to do with that. What's the relevance of what you wanted? The relevance of what I wanted here, Your Honor, one thing, regarding this Madness has to stop email. The words by Joseph, during his testimony at the MSPB, was that the madness was she kept filing EEO complaints. The written words of Joseph, Matthew Donahue, and Asa Dobie in email exchanges that were commented in our brief and were part of our opposition to the motion for summary judgment was that, oh, this woman, EEO is enabling her by taking her EEO complaints. For me, that's the definition of retaliation. If you complain that the fact that you're filing EEO complaints is a madness, that's the definition of retaliation. What would other EEO activity involving these people have done to help your case? Because it would have shown the knowledge that the employer had regarding the propensity of these people. We never could show this, Your Honor, because Judge Garcia-Guerra would have said, no, doesn't matter, I'm not going to admit it. The propensity of these people to do what? Because these people had a record of sexual harassment and harassment and retaliation. We did comment some evidence that we had from statements from other employees that had been given. We commented that. So you're talking about a propensity relative to your client or other employees? I am talking about what the DEA knew regarding what his employee supervisors were behaving. They had a, if they had a record, we believe they had, we had at least two incidents that we had discussed, if they had a record, if they had a record. Are you saying a record of sexual harassment or a record of people, of retaliation against people who complained about sexual harassment or both? Both. We made reference in our brief, because we did have this evidence, which were statements given by a co-worker of Cassandra, who said he heard Joseph say that he did not want Cassandra, but he was forced to work with her. We have evidence of another woman who complained about Joseph when he was at the Atache in Trinidad Tobago Embassy. And he said he is vindictive and they covered up my complaint of sexual harassment. Those are statements that we provided as evidence in opposition for the summary judgment motion. We have another statement saying that Joseph was known to be vindictive, that if you know, so did I ask for the formal complaints? Yes, I did. Not only EEO, but OIG also, because there were several complaints filed by Cassandra in OIG, and I did depose the OIG investigator. And he made reference to several, and I asked him for all the complaints that he had investigated as an OIG investigator regarding Joseph and Matthew Donahue. That was the request while doing his deposition. It took me a year of follow-up with Elisabetia, with USA Elisabetia, for her to give it to me. And then the court said, yes, they have to provide it. And then they said, no, no, no, but it doesn't matter because it's inadmissible. Well, the rule for B2 evidence is not inadmissible per se, nor admissible per se. That's what the Supreme Court said in Supreme Justice Mendelsohn. In our First Circuit, we have the two-part test, which I think the latest case was Judge Thompson participated and said, you have to go through. And in the Seventh Circuit, because I studied this and I investigated this, Your Honor, Judge Hamilton, you defend the, what is it called? I was looking for it. I think we agree. We understand that. Judge Hamilton has a question, though. Factual question. Yes. In the district court, where did you challenge the independence of the investigation that led to Germanowski's decision to terminate? In this case. In this case, where in the district court record did you do that? When I asked for the specific information of the record of Matthew Donahue and Dave Joseph. We're not, did you, where did you argue in your summary judgment papers that the investigation was not sufficiently independent? When I said that the information I was seeking was important to determine what was the knowledge the agency had in taking the decision regarding Cassandra. So if I go to your 50-60 motion, I'm going to see that laid out there? Yes. And you're going to see the arguments there. But remember, the summary judgment was not decided on that. That was a ruling that was like kind of collateral because the judge did not address the missing information discovery in the summary judgment motion. Right. But your lead argument is you didn't get discovery that might have come from that. Yes. We understand. Thank you. And I reiterated that. Thank you. Anything else I can add? So that concludes arguments in this case?